The Court appreciates your willingness to accept the appointment in this case under the Criminal Justice Act, and you may proceed. Thank you. I can tell you that the drive up there was a little fun yesterday afternoon. We appreciate your coming. You know, as I've been thinking about the oral argument, the first thing that popped in my head is Parkinson's Law. I sure hope that I don't expand my talk to the time filled because I was originally organized with a co-defendant case. Well, you're not required to use all of your time. I'm not planning on it, but we'll see how it goes. Mr. Shipp wants the Court to fully review and consider and reverse all aspects of the decision. I think there are a few points that want to be brought to this Court's attention. I wonder, 20 days from today, approximately 20 days from today, when you look at my cell going to have to arrest me for my violations of the tax code, whether or not that is his headache, as he reports in his text, is it present sense impression, whether it's physical or mental health conditions, whether or not his statements can be hearsay, or whether or not there's a confrontation violation. That's about the same thing that happened here. The deceased, M.W., died on or about January 3rd, according to the projections and the finding of the trial court. He wasn't found until 20 days later. Twenty days later, when he was found, they went through his cell records and found that there was present sense impressions and there was mental or physical statements and they were not hearsay or they were exceptions hearsay, and further, that because of their general nature, they did not violate the confrontation clause. Clearly, neither Mr. Shipp nor Mr. Mobley had any opportunity to cross-examine the deceased. Didn't even know that he was dead. Nobody knew he was dead, in fact, for 20 days. So when we talk about the confrontation clause and we talk about the opportunities, we want to know what happened and whether or not the court was able to find and accept and consider the text messages, and if the court, if this court's review, page 18 of the writ decision, to the nature and extent that the court relied upon those text statements of 20 days prior before they even found him and said that they were admissible. We submit that they were not admissible, that the statements made by the deceased, once again, who had been dead for 20 days before anyone even looked at it, talking about, oh, I'm nodding off. We don't know who he's with. We don't know how many people are there. The evidence that they found was there were 20 syringes or approximately 20 syringes laying around. The court made specific factual findings saying that the deceased must have used up the entire amount that he bought. We don't know if anyone else was in the room. We don't know. The court took M. W.'s statements that were made in text responses to one of the identified co-conspirators and said, from these, I extrapolate the following facts, and the court even said that there's significant reliance upon those facts when it made the findings. It's serious here because without that information, arguably, Mr. Shipp would not have been convicted of distribution causing death. With distribution causing death, obviously, there's a mandatory minimum, 20 years. Mr. Shipp, that would be 240 months. Mr. Shipp got 300 months, and the guideline calculations were 360 months. So it was below the range. We're not arguing that that was an abuse of discretion or the like, but we want the court to know, and as the court is aware, that the death itself can be a basis for raising the amount of the guideline calculations. Mr. Shipp continues to deny that he had any type or any significant basis in which to be found guilty. The record speaks for itself, and the court's findings speak for itself regarding whether or not there was criminal involvement. But the critical question here is, was there enough? Without anything more here, was there enough in the record for this court to find that it was causing death? I would also note that what we argued in the briefing was it was not just MW statements that were extrapolated from his text messages to the alleged co-conspirator, but there was another individual, Sidney, mostly spelled S-I-N-D-E-E, sometimes S-I-N-S-I-D-N-E-E. I'm sorry, I got it wrong. But we argued that those statements were also inadmissible hearsay, and also we did not have the opportunity to confront Ms. Sidney's statements. The court made some findings that it was not being considered for the truth of the matter asserted when it made its determinations, and the government counsel argued that it was A, for providing contents for the co-conspirators' alleged communications. We don't know that those were necessarily relevant to the charges as against Mr. Shipp or Mr. Mobley, but also the government says it was for the limited purposes corroborating the co-conspirator was dealing with selling drugs to this Sidney. To us, those determinations are based upon documentation. The determinations regarding the deceased and the determinations regarding the texts are more of a legal question that this court can evaluate and review for the purposes of hearsay and confrontation than they are factual determinations for the court, because the court should not have considered those statements. If the court should not have heard what M.W. was saying the day that he is identified to die, then causing death is not there. If causing death is not there, number one, we believe that the case law is pretty clear that... You say now that the judge said he wasn't considering some of those statements for the truth of the matter asserted, and this was a bench trial, as I understand it. Yes. What's your rationale for why we should conclude that the judge nonetheless considered the statements for the matter, truth of the matter? A close reading, or more specifically, a more complete reading of his rulings, and specifically I would urge you to review the arguments submitted by government counsel briefing, that the government counsel uses the statements for the purpose of the truth of the matter asserted, and I think that kind of... In what, in a trial brief, you mean? No, in the appellate briefing. That's after the fact. It is after the fact, but it helps this court perceive and understand what the trial court had in front of it at the time. So let me see if I can find it real quick. Well, we can read the record. I just wanted to understand, you know, with a bench trial, I guess one might think the court would be aware of the rules of evidence, and if the court is making statements about sorting the evidence according to the rules of evidence, then I'm wondering how you thought we could find error. Well, first of all, I think that as... First of all, let me take it in three steps. Number one, yes, the court was very specific and said during the transcript that it would necessarily instruct the jurors of the limited scope, and it's very aware of that. I don't... The court did say that, but I think the... In part, the proof's in the pudding as far as when the court did subsequently rely on some of those statements. It appears to me that they were more for the truth of the matter, so... When did the court rely on them? In what context? Are you saying in its sentencing or in ruling? Did he give a rationale for the verdict or for the judgment? The verdict itself, I think, was 20 pages, so it was a... All right. So you're saying in that order you think he indicates using the statements for the truth of the matter? I think that a closer reading would support that. Okay. Thank you. But I would respectfully end, not take up any more time, and reserve the remainder for a rebuttal. Thank you. You're welcome. Thank you for your argument. Mr. Hanson, we'll hear from you. Good morning. May it please the court. Okay. That should be fine. I can tomorrow. Oh, good. I'm glad you like it. All of these statements were admitted at trial, and there's no dispute today that they were admissible as admissions of a co-conspirator, Kami Kinzenbach, during and in furtherance of the conspiracy. But by themselves, they make no sense. For that reason, this Court's precedent recognizes that the other side of the conversation is admissible to prove context, to provide context, and when offered for that reason is not for the truth of the matter asserted, and therefore is not hearsay. And that's what happened in this case. The District Court's rulings were quite clear. First with Sidney's statements on page 602, the Court says that Exhibit 32 is being admitted for context only. The same goes for the victim's text messages in Exhibit 36. The Court says that most of those are being admitted only for context, and therefore not hearsay. To the extent some of his messages were admitted for the truth of the matter asserted, the Court says he has some slicing and dicing to do. Some will be, or most will be context, a few will be admitted under recognized hearsay exceptions. And Judge Culleton, as you recognize, this is a bench trial. So in a normal jury trial, we usually provide a limiting instruction to the jury to give them the proper and improper uses of those statements. But here we have a judge who's trained in the rules of evidence, experienced in applying those rules, and recognizes that he needs to compartmentalize how that evidence is used. So we can trust that the Court did what it said it was going to do and considered those only for the truth of the matter asserted if it was a hearsay purpose, but everything else was for the non-hearsay purpose of providing context to Kami Kinsenbach's statements. It seems that the appellant was a little bit imprecise in describing exactly the findings that are made by the judge, because the judge has made extensive findings here. In his 20-page order, he does go through and set forth a factual scenario upon which he was relying in making his determination of the guilt or innocence of the defendant. And if you look at that, do you know, based on the arguments that's been presented and the briefing, just what exactly are the statements that were relied on that should not have been relied on in the appellant's point of view? I don't know. And that's been a challenge for me all along, trying to figure out what exactly the statements are that he claims were admitted for truth of the matter asserted. Because the argument seems to me to an invitation to make a determination by gestalt, right? That we're just going to look at the whole thing and eyeball it and kind of figure out what's in there. And I'm just trying desperately to sort out what exactly it is, and you just can't tell me either what exactly it is, as we sit here today. Correct. I don't know for sure what the claim statements are that were per se. We'll ask the other lawyer. Yeah. And if we look at how the judge actually used the statements in his ruling, Sidney barely comes up at all in the ruling. I think mentioned two or three times. But it's in context of Kami Kinzenbach testifying, she was one of my buyers. And it comes up in the video evidence, the doorbell video evidence of Sidney showing up for one of those short visits to buy heroin. So the court doesn't even mention the text messages in Exhibit 32. The court does set out a timeline on page, sorry, on page 14 about January 3rd, and there's a previous one about the other sales to the victim. But again, I don't see anything in there that's being offered for the truth of the matter asserted. It's being offered to set up the timeline that Kami Kinzenbach testified to that the videos verify. So none of that was admitted for truth of the matter asserted. It's all providing context for what Kami Kinzenbach testified to and what she said in those out-of-court statements. So for instance... How about the statement that M.W. was nodding out? Yes. And that's the only one that I can find that the court admitted for the truth of the matter asserted. But the court is very clear with that one that it's being admitted as a present sense impression. And alternatively... We're clear that that was considered for the truth of the matter. You're referring to what else? Right. When you say you're not sure. Yeah. So that one's admitted as a present sense impression. I think it's also admissible as a statement of that existing physical state or mental state, which is just a specialized form of a present sense impression. And to support that application of the hearsay exceptions, first we're going to look at the actual text or the substance of the text message, which uses the present tense, I'm nodding out, which means he's experiencing that feeling as he's writing the text message, which provides that contemporaneity to satisfy that exception. But beyond that, the rest of the evidence sets up a clear timeline that supports that he was using the drugs as he said that and feeling the effect of those drugs as he said that. Starting at 1216 that day, there's a text message seen with Kinzenbach setting up the drug sale. At about 1230, we have the ring video where the victim actually shows up and buys the drugs. At 145, there's another exchange where Kim Kinzenbach basically says I'm glad you like the drugs that I just sold you. At 213 is when we have the message to his acquaintance, Pat, saying I'm nodding out. And then at 316 is the text message that is the last outgoing call. And after that, he never sends another message, never picks up the phone again, which provides a pretty clear indication of when he actually permanently nodded off and overdosed and eventually died. So that combined with the substance of the message itself provides the proof that it's admissible as a present sense impression. Apart from that, those statements were harmlessly cumulative. We have Kim Kinzenbach's testimony that she sold drugs to Sidney, to the victim, and to several others. We have three other customers who testified that they bought drugs from Kinzenbach. We have text message exchanges between them that are not challenged on appeal that verify that. As to the messages with the victim, again, we have the videotape proof that he shows up to the house and buys the drugs a short time before his death. So none of the out-of-court statements were necessary to actually prove the case. They're just extra that only slightly influenced the court, if anything. Turning to proof of the causation element, again, that clear timeline shows when the source of the drugs during those months were Mr. Shipp and Mr. Mobley. So that links them to the heroin that was sold to them. All the defendant can come up with is speculation that maybe the victim bought the drugs from somebody else, or maybe he had a different source, but there's no proof of that. And this court has said in the past, in the Cardwell case, that those sorts of speculative claims are commonly rejected, sometimes out of hand. And on the other side, we have proof that the government offered that drug users are generally buying only a small quantity of drugs. That's all they can afford. They go back sometimes daily, sometimes multiple times a day, to buy small quantities of drugs when they get enough money to do so. And in this case, we're talking about quarter-gram, half-gram quantities of heroin that the victim bought from Cammie. And critically, when his body is discovered, there's only one baggie that they find. It has 0.04 grams left in it, but he would have purchased, based on his $80 purchase, about half a gram. So it shows he used most of those drugs right before his death. On top of that, the police looked through his phone and they found no messages to any other possible drug dealers that could be a source of the fatal drugs. Next, the medical examiner's testimony provided the critical scientific link between his heroin use and his death. There's morphine in his toxicology, which is a metabolite of the heroin. And that, combined with his history of drug abuse, the evidence that's found at the scene, and the lack of any injury or disease, showed that heroin intoxication was the cause of his death. And critically, the medical examiner explains that the absence of fentanyl in the toxicology could not support any conclusion that he never used fentanyl, or that he didn't use fentanyl that day. Instead, she explains that because of the gap between his death and the discovery of his body, he was in a state of advanced decomposition. And because of that, she could not collect the usual fluids that she would collect for toxicology, and therefore could not draw any conclusions about what was in his blood or not. And that's the critical distinguishing factor from the Ewing case that the defendant cites. In that case, which is an unpublished, out-of-circuit case, there was a, for lack of a better term, a fresher autopsy, where the specimens collected were in a better state, and the defense expert could draw conclusions from it. Here, the medical examiner is very clear. She can't draw any conclusions like that, and the defense, critically, did not offer any competing evidence that would undermine that. So because the evidence proved that Mr. Shipp participated in a conspiracy that resulted in the victim's death, the district court properly found him guilty, and this court should affirm. Thanks. Thank you for your argument. We'll hear rebuttal. Short, briefly. To answer the Court's question, on page 13 of the written decision, it starts off, The chain of events starting late January 2021 and continuing throughout the afternoon of January 3 is crucial to this case. And at a point, that's where he quotes the text messages from the deceased and says, The stuff was fire. Later on, he also quotes the deceased and says, I'm nodding off. On page 18, the Court makes reference to significant findings and says that those findings are referenced about nodding off and making the information and the communications with the co-conspirator as part of the analysis as to whether or not there's a sufficient record in to find Mr. Shipp guilty of the causing death. So, we do have a difference regarding the timeline versus the truth of the matter asserted. We do have a notation regarding whether or not these statements by the deceased were important, but as I made reference to these pages, I guess it's 15 and 16 of the pages. That's what I believe it is. I'm sorry, 13 and 15 of the pages of the decision are evidence of the Court's considering what the deceased says for the truth of the matter asserted. And obviously, again, that's also a violation of the Confrontation Clause. If we look at the hearsay rule and we talk about nodding off in particular, that seems to be that it's going to fall into 8033 as a then existing physical condition statement. That statement can come in and it could be considered for the truth of the matter asserted. So, you're left then with a confrontation claim on that piece and the statements of dying declarants are sometimes viewed differently. Although, this can't be a dying declaration because he had no knowledge of impending death. Well, and that's why I started off with the IRS example, is because what we find 20 days later, how are we bootstrapping that to get to the point that that was a present-sense impression? Nobody was there. When you have a present-sense impression, we're making observations of somebody else in front of us. We're making those determinations or the person's making statements for the purposes of physical or mental care. Neither of those exist. We have some kind of cold, unsubstantiated, without any foundation, written text that we don't find until 20 days later and we're bootstrapping from that, that that is a present-sense impression. Well, but isn't that a preconditional fact question that the judge is supposed to make before they get to the hearsay determination? The preconditional fact is, what are the other circumstances around it? And of course, the rules of evidence don't apply in those preconditional fact finding questions, so he's just going to decide, what was the guy telling us? Was he telling us? Was he telling people there, I'm nodding off? Is that a statement that his physical condition was, he's high and nodding off or not? And the rules don't apply and doesn't the judge get to draw that preconditional fact question before they get to the 803 question? To answer your specific question, the court does have some opportunity to evaluate those matters as an overall scheme as to whether or not it is, in fact, hearsay. That kind of steps aside the confrontation issue, but on what basis did the court make a finding to make those preconditional statements when all we have here are the simple text messages that we didn't find until 20 days later? And I would say that judges sometimes draw inferences from the statement itself and you would argue that that's improper. I'm not saying it's improper. I don't know that there's any basis here. No basis for it here at least. Exactly. Okay, got it. I see my time is up. Thank you. Very well. Thank you to both counsel. The case is submitted. The court will file decision in